IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALEX WOODS and ROSE CARTER** | : | |
| | : | Civil Action No. |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| **CITY OF BATON ROUGE-PARISH OF EAST BATON ROUGE, and MURPHY PAUL, and JAMES THOMAS, and JOSEPH CARBONI, and TROY LAWRENCE, and MATHEW WALLACE, and TAFARI BEARD, and LORENZO COLEMAN, and DAVID KENNEDY, and STEVEN NEVELS, and DOUG CHUTZ, and TODD THOMAS, and JESSE BARCELONA, and KATHERINE ALVARADO** | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

## COMPLAINT WITH JURY DEMAND

The Baton Rouge Police Department (BRPD)maintains a policy of strip-searching individuals taken into their custody, without probable cause and without individualized reasonable suspicion that the individuals are secreting weapons or drugs. Strip searches are a uniquely invasive tactic, and it is used by Baton Rouge officers to humiliate, denigrate, and intimidate individuals. The facility where this unconstitutional practice is executed, known to BRPD's Street Crimes Unit as its "BRAVE Cave," has been shuttered, but the horrific details of what occurred there is still coming to light. BRPD official policy was the moving cause of this widespread unconstitutional practice.

Plaintiffs Alex Wood and Rose Carter, both fell victim to this unconscionable practice in the BRAVE Cave. They now bring this action seeking redress for the pain and humiliation they suffered.

1

**PARTIES**

1. Plaintiff ALEX WOODS is an adult resident of the State of Louisiana who brings this action seeking redress for violations of his rights protected under the United States Constitution and the Louisiana Law on Torts.

2. Plaintiff ROSE CARTER is an adult resident of the State of Louisiana who brings this action seeking redress for violations of his rights protected under the United States Constitution and the Louisiana Law on Torts.

3. Defendant CITY OF BATON ROUGE-PARISH OF EAST BATON ROUGE is a political subdivision of the State of Louisiana and the governing authority of the City of Baton Rouge. Said Defendant is responsible for the polices, practices, and operation of the BRPD.

4. Defendant MURPHY PAUL is the Chief of BPRD and a policymaker for CITY OF BATON ROUGE-PARISH OF EAST BATON ROUGE as it pertains to police practices including searches, seizures, training, discipline, use of force, and arrest authority.

5. Defendant TROY LAWRENCE is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

6. Defendant JAMES THOMAS is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

7. Defendant JOSEPH CARBONI is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a

BRPD officer.

8. Defendant MATTHEW WALLACE is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

9. Defendant TAFARI BEARD is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

10. Defendant DAVID KENNEDY is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

11. Defendant KATHERINE ALVARADO is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

12. Defendant JESSE BARCELONA is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

13. Defendant DOUG CHUTZ is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

14. Defendant STEVEN NEVELS is a resident of the State of Louisiana and a BRPD officer at the time of the underlying events giving rise to this action. At all relevant times, said Defendant acting under color of state law in the scope and in the course of his duties as a BRPD officer.

## JURISDICTION AND VENUE

15. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Louisiana law.

16. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b), because the defendants reside in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**CONSTITUTIONAL VIOLATIONS SUFFERED BY PLAINTIFFS**

17. On August 10, 2023, at approximately 11:00PM, members of the BRPDs "Street Crimes Unit" arrived at Mr. Woods and Ms. Carter's home with a search warrant.

18. Defendants James Thomas, Joseph Carboni, Troy Lawrence, Matthew Wallace, Tafari Beard, Lorenzo Coleman, David Kennedy, Steven Nevels, Doug Chutz, Todd Thomas, Jesse Barcelona, and Katherine Alverado (hereinafter "The Officers") are members of the Street Crimes Unit.

19. The Officers came into their home, shot and killed their caged dog and took Mr. Woods and Ms. Carter into custody.

20. During the course of the invasive and unjustified search, the officers realized they were at the wrong residence and had no basis to compel Mr. Woods and Ms. Carter to follow their directives.

21. Mr. Woods and Ms. Carter informed the officers a minimum of four times that they were at the wrong residence.

22. Despite this knowledge, The officers then forcibly transported Mr. Woods and Ms. Carter to "the BRAVE Cave."

23. The BRAVE Cave is an unmarked BRPD that was shuttered after it was revealed that members of the Street Crimes Unit became public. It is not a jail or detention facility; no correctional staff work at "the BRAVE Cave."

24. The BRAVE Cave is a warehouse that the Street Crimes Unit has adopted as their home base over the past several years. It is a place where BRPD takes suspects to interrogate them, gather intelligence, and attempt to "flip" them to begin cooperating with BRPD.

25. The reason The Officers transported Mr. Woods and Ms. Carter to the BRAVE Cave is because they suspected they might be involved in illegal drug activity.

26. The Officers had no factual basis to suspect that Mr. Woods and Ms. Carter were involved in illegal activity.

27. The Officers did not have reasonable suspicion or probable cause to believe Mr. Woods and Ms. Carter committed any crimes.

23. Ms. Carter was detained and held while the officers investigated whether they could boot strap any criminal charges after their obvious error.

24. Ms. Carter was held at "the BRAVE Cave" for over two hours.

25. The officers intentionally turned off their body-worn cameras at "the BRAVE Cave," even though their investigation into Mr. Woods and Ms. Carter was ongoing.

26. The Officers subjected Mr. Woods and Mr. Carter to Strip and Body Cavity searches meaning they were viewed naked superficially and internally in the most invasive and humiliating manner possible.

5

25. The Officers examined Ms. Carter forced her to spread her vagina and buttocks for inspection and examined her vagina using a flashlight.

26. The Officers did not have a warrant, probable cause, consent, individualized reasonable suspicion, or any other legal justification to conduct either a Strip or Body Cavity search of Mr. Woods or Ms. Carter.

**BRPD's OFFICIAL WRITTEN POLICY**

27. When The Officers conducted their illegal search of Mr. Woods and Ms. Carter's rectum and vagina, they were acting pursuant to formal BRPD policy.

28. BRPD Policy General Order No. 281 states in pertinent part:

*III. Strip Search*

*A. Arrestees will not be subjected to strip searches unless the officer has articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person.* **Reasonable suspicion** *will be based on the following factors:*

*1. The nature of the offense charged;*
*2. The arrestee's appearance and conduct;*
*3. The circumstances of the arrest.*
*4. The arrestee's prior record. . . .*

*C. Strip searches may be conducted on non-arrestees based on individualized articulable reasonable suspicion to frisk . . . .*

*1. Reasonable suspicion . . . will be based on the same factors listed in III A.*

29. The written BPRD policy violates the Fourth Amendment.

**BRPD's KNOWLEDGE OF ILLIGAL POLICY AND PRACTICE**

30. BRPD's Street Crimes Unit regularly subjects all those brought to "the BRAVE Cave" to strip searches, including non-arrestees merely suspected of criminal wrongdoing.

31. Since January 2023, BRPD Street Crimes Unit conducted strip searches on approximately 1,000 individuals, including hundreds of individuals whose detention was based solely

on reasonable suspicion of wrongdoing (or less). Hundreds of these individuals, like Ms. Carter, were released without formal arrest.

32. In 2021, BRPD officers' use of strip searches became a national news story when video of BRPD officers' (including Troy Lawrence, Jr.) strip search of Clarence Green and his juvenile brother was broadcast on *CBS Evening News*.

33. In a May 2021 press conference, Chief Murphy Paul and Deputy Chief Myron Daniels defended the officers' strip searches at a public news conference.

34. Chief Murphy Paul, with the input of Deputy Chief Myron Daniels, cleared the officers of any wrongdoing related to the illegal strip searches depicted on the video.

35. Chief Murphy Paul and Deputy Chief Myron ensured that BRPD officers conducted strip searches consistent with General Order No. 281's instructions that strip searches could be properly based on solely on an officer's suspicion of wrongdoing.

36. Beginning in 2018, high-ranking BRPD officials began covering up wrongdoing by colleagues in the Street Crimes Unit.

**BRPD'S DELIBERATE INDIFFERENCE TO WIDESPREAD PRACTICE**

37. There is substantial evidence of the impact BRPD's widespread practice of unconstitutional strip searches.

38. Actions describing the widespread practice, its details, and its impact have been brought before this honorable court since the BRAVE Cave has been publicly revealed.

39. A non-exhaustive list of said actions appears below.

| | |
|---|---|
| Lawrence Mealey v. City of Baton Rouge | 3:23-CV-1508 |
| Courteni Hayes v. City of Baton Rouge | 3:23-CV-0511 |
| Irdielle Brown v. City of Baton Rouge | 3:23-CV-0514 |
| Jeremy Lee v. City of Baton Rouge | 3:23-CV-1229 |
| Ternell Brown v. City of Baton Rouge | 3:23-CV-1313 |

    Jason Jackson v. City of Baton Rouge   3:23-CV-1591

    Shona Davis v. City of Baton Rouge   3:23-CV-1129

  40.  The allegations and record evidence in said actions demonstrate that the Street Crimes Unit's unconstitutional practices were widespread and pervasive.

  41.  The allegations and record evidence in said actions demonstrate that Murphy Paul and City of Baton Rouge officials acquiesced, ratified and endorsed this practice such that it functioned as an official policy.

**COUNT I: 42 U.S.C. § 1983 UNREASONABLE SEARCH AND SIEZURE**

  42.  Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

  43.  The Officers were, at all relevant times, duly appointed police officers acting under color of state law.

  44.  The Officers searched and seized Plaintiffs and Officer Travis without reasonable suspicion, probable cause, consent, or other legal justification.

  45.  The Officers' search and seizure of Plaintiffs was unreasonable and therefore in violation of Mr. Hughes' rights under the Fourth Amendment of the United States Constitution.

  46.  The Officers' unconstitutional search and seizure caused Plaintiffs to suffer pain, humiliation, degradation and anguish.

  **WHEREFORE**, Plaintiffs demand judgement in his favor, and against The Officers pursuant to 42 U.S.C. 1983, in an amount in excess of the jurisdictional limit, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

**COUNT II: 42 U.S.C. § 1983 MONELL LIABILITY**

47. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

48. BRPD, Murphy Paul, and Parish-City officials maintains and implements an unconstitutional formal written policies authorizing illegal strip-searches that was a moving cause of the constitutional violations suffered by Plaintiffs.

49. BRPD, Murphy Paul, and Parish-City officials maintained a pattern, practice, custom, and informal policy of false arrests, excessive force, unlawful seizures, and strip searches.

50. This widespread practice is so permanent and settled that it constitutes formal policy; and that adherence to that practice was a moving cause of the constitutional violations suffered by Plaintiffs

51. BRPD, Murphy Paul, and Parish-City officials and policy makers were deliberately indifferent to the constitutional violations caused by BRPD's polices, including those violations suffered by Plaintiff

52. BRPD, Murphy Paul, and Parish-City officials failed to adequately supervise, train, and discipline BRPD personnel; and were deliberately indifferent to the constitutional violations that were caused by these failures, including those violations suffered by Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgement in his favor, and against The Officers pursuant to 42 U.S.C. 1983, in an amount in excess of the jurisdictional limit, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial

### COUNTS III,IV,V,VI:  STATE LAW TORTS

53. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

54. As more fully described above, all defendants (including the City of Baton Rouge-Parish of East Baton Rouge Parish, BRPD, and Chief Murphy Paul) are responsible and liable to Plaintiff for the damages and injuries Mrs. Brown has suffered as a result of Defendants' actions and/or inactions pursuant to:

   A. Dd Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it;"

   B. Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill;"

   C. Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody;" and

   D. Louisiana Code of Civil Procedure Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

55. **Battery** - "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact,

56. **Assault** - 'a threat of such a harmful or offensive contact."

57. **Intentional infliction of emotional distress-** "the Louisiana Supreme Court has outlined the three elements a plaintiff must establish in order to bring a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct by the defendant; 2) severe emotional distress suffered by the plaintiff; and 3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct."

58. **False imprisonment–** is the intentional confinement or detention of another, without his consent and without proper legal authority.

59.     **Negligence**– In order to prevail in a negligence action, a plaintiff must prove the following five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care

60.     Plaintiffs injuries were caused by City of Baton Rouge-Parish of East Baton Rouge Parish, BRPD, and Chief Murphy Paul's breaches of Louisiana's laws on Torts.

**WHEREFORE**, Plaintiffs, pray that a copy of this Complaint is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of Plaintiff and against all Defendants jointly, severally, and/or *in solido* and that said judgment is in excess of the jurisdictional limit including interest, delay damages, costs of suit, attorneys fees, general and specific damages, punitive and exemplary damages and any other damages as provided by law.

Respectfully submitted,

*/s/ Ronald Haley*
Ronald Haley, Esquire
HALEY AND ASSOCIATES
8211 Goodwood Blvd Ste E,
Baton Rouge, LA 70806

Mark V. Maguire, Esquire
MCELDREW PURTELL
123 South Broad Street
Suite 2250
Philadelphia, PA 19109
*Pro hac vice petitions forthcoming*

*Attorneys for Plaintiffs*

Dated:  August 9, 2024